(No. 55506.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. RONALD C. HUCKSTEAD, Appellant.

*Opinion filed June 18, 1982.—Rehearing
denied October 1, 1982.*

SIMON, J., dissenting.

Daniel D. Yuhas, Deputy Defender, and Gary R. Peter-

son, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Melbourne A. Noel, Jr., and Val Gunnarsson, Assistant Attorneys General, of counsel), for the People.

JUSTICE MORAN delivered the opinion of the court:

On September 18, 1980, defendant, Ronald Huckstead, was convicted of murder following a jury trial in the circuit court of Coles County, and sentenced to a term of 25 years' imprisonment. A divided appellate court affirmed. 98 Ill. App. 3d 1206 (Rule 23 order).

The issues presented are: (1) Did the trial court's failure to give Illinois Pattern Jury Instruction (IPI), Criminal, No. 25.05 (1968) constitute plain error? (2) Did the trial court commit reversible error by giving IPI Criminal No. 3.04 to the jury?

On the evening of March 28, 1980, defendant was in the Corner Lounge Tavern in Mattoon. Although the testimony was somewhat conflicting, it appears that at approximately 10:30 p.m. he became involved in an argument between Ronald Blagg and Murray Dixon, the victim. When the argument was over, the victim left the two men but subsequently became involved in a dispute with the defendant outside the tavern, where an altercation occurred. Although the testimony again differed with respect to the exact nature of the altercation, it appears that at some point the victim pulled a folding knife and inflicted a cut on defendant above his waistline. Defendant testified that he ran to his home, located about one mile from the tavern. However, a police officer at the scene, Maurice Sparr, testified that after the incident defendant and the victim reentered the tavern, then came out, at which time defendant told Sparr he had been cut and that he didn't need any help. Sparr

testified that, when he told both persons to go back inside or go home, defendant stated he would go home to obtain a gun. Instead, the defendant and the victim returned to the tavern. Several other witnesses also testified that after the altercation the victim and defendant returned to the bar and that defendant made a phone call before leaving. At approximately 11:15 p.m., Officer Sparr observed the defendant run from the tavern and, subsequently, he saw the victim walk outside and enter a van.

The following witnesses also testified for the State. Charles Dyer stated that immediately after the stabbing incident he heard defendant tell Ronald Blagg that "he would get the [victim] before the night's over."

Linda Bloxom testified that the victim, upon reentering the tavern after the altercation, repeatedly told defendant, "Forget it, Huckstead" and "We've been friends for too long." She stated that defendant then made a phone call and left the tavern. Bloxom related that later, when she exited the Corner Lounge, she saw the defendant alone in an automobile. She testified that the defendant asked her if the victim was still inside and she responded, "Yeah, just forget it. I thought you guys had *** settled it." Bloxom testified that the defendant's reply was, "I'm going to shoot that [expletive deleted]."

Sue Reardon testified that upon leaving the Corner Lounge she observed the victim walk to an auto in which defendant was seated. She stated that she heard the victim say to defendant, "Just forget it; it was over." While being driven away, she heard three shots, turned, and saw the victim fall and the defendant drive away.

Dean Young testified that while driving by the Corner Lounge he noticed the victim through the window of the bar and stopped to go in. On his way in, he encountered the victim outside the lounge. Young stated that he

started to talk to the victim when he heard someone in a parked car yell something like "Murray, I'm going to shoot your [expletive deleted]." According to Young, the victim was staggering as he walked toward the car and the car's motor was running. Young observed something that looked like a gun protruding about a foot from the car window. Young stated that the man inside the car yelled something like, "You cut me." The victim yelled "Shoot me if you're going to shoot me" and "I'm close enough you can't miss." Young stated that he then turned to seek assistance, at which time he heard a shot, then several more shots. Young testified that he turned, saw the victim fall to the ground, and observed the car speed away.

As earlier noted, defendant claimed that he ran home after being cut. He further testified that, after he reached home, he retrieved a rifle from the trunk of his car, placed it on the front seat, and drove back to the tavern. Defendant stated that when he saw the victim leave the bar he decided to speak to him in an attempt to resolve their differences. Defendant called to the victim. As the victim approached the car, they got into an argument. Defendant related that the victim said, "You have a gun, so use it" and "Go ahead and shoot me." He said that he told the victim he was not going to use the gun and to "stay back so we can talk." Defendant stated that the victim moved toward him, while swearing and reaching toward his right side. Defendant testified that he thought the victim was reaching for a weapon, that he (defendant) panicked and repeatedly squeezed the trigger of the rifle and then drove off. Defendant claimed he did not intend to shoot the victim when he returned to the tavern, but believed it was necessary to do so in order to protect his own life. He also stated that he believed the victim had a reputation for violence when drinking, and that he himself had drunk 16 beers

that day. He related that he did not recall speaking to Officer Sparr, that he did not recall reentering the lounge, and that he did not recall using the telephone at the lounge on the night in question.

In addition to the defendant, the following witnesses testified on his behalf. Gary Sanders stated that he left the Corner Lounge at approximately 11:30 p.m. and observed Murray Dixon standing beside defendant's car door with his right hand on the roof and his left hand on the door of the auto. The two men were arguing loudly. Sanders saw the victim rapidly drop his right hand and heard several shots fired, whereupon the victim fell to the ground and the automobile drove away.

William Prather testified he observed the victim speaking loudly with someone in a car. According to this witness, the victim had both his hands on the car roof. Prather testified that the victim dropped his right hand "real fast" and four shots were fired in rapid succession, whereupon the vehicle sped away.

Paul Logan testified that he heard the victim shouting while standing next to defendant's car. He stated that it appeared that the defendant tried to put his car in gear but that the victim reached through the window to prevent it. He said that the victim then returned his right hand to the roof of the car. Logan declared that at this point he turned to walk toward his car and, as he was walking away, heard four or five shots fired rapidly.

Marvin Craig testified that he left the tavern with Linda Bloxom that evening and that he did not see defendant's car or hear anyone say he would shoot the victim.

On rebuttal for the State, Linda Bloxom and another witness, Teri Brackney, testified that Bloxom left the lounge alone, and Sue Reardon testified that Craig left the lounge five minutes before Bloxom.

The victim was pronounced dead at the scene. Subse-

quent examination revealed seven wounds to the body. A knife was found in a sheath on the victim's belt. None of the witnesses testified to seeing any weapon in the victim's hands. Several defense witnesses testified to the victim's bad reputation for violence while several State witnesses testified to the victim's reputation for nonviolence.

The jury in this case received a series of instructions which included the following ones based on the indicated pattern instructions:

IPI Criminal No. 2.03:

"The defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence."

IPI Criminal No. 7.02:

"To sustain the charge of murder, the State must prove the following propositions:

*First*: That the defendant performed the acts which caused the death of Murray Dixon;

*Second*: That when the defendant did so, he intended to kill or do great bodily harm to Murray Dixon, or

he knew that his act would cause death or great bodily harm to Murray Dixon, or

he knew that his acts created a strong probability of death or great bodily harm to Murray Dixon.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty of murder.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions

has not been proved beyond a reasonable doubt, then you should not find the defendant guilty of murder."

IPI Criminal No. 24.06:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

The jury was *not* given IPI Criminal No. 25.05, which provides that, in addition to the elements of the crime, the State must prove beyond a reasonable doubt "[t]hat the defendant was not justified in using the force which he used."

It is well established that the failure to object at trial to an asserted error in jury instructions waives the question (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180; *People v. Roberts* (1979), 75 Ill. 2d 1, 14) and that no party may raise on appeal the failure to give an instruction unless he tendered it at trial (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180; *People v. Underwood* (1978), 72 Ill. 2d 124, 129; 73 Ill. 2d R. 366(b)(2)(i)). This court has also repeatedly recognized that issues not raised in a post-trial motion following a jury trial are effectively waived for appellate review. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 181; *People v. Foster* (1979), 76 Ill. 2d 365, 380; *People v. Coles* (1979), 74 Ill. 2d 393, 397.) In this case, the defendant did not object to IPI Criminal No. 7.02 or tender IPI Criminal No. 25.05 to the court. Further, defendant did not raise the matter in his post-trial motion. Thus, the trial court's asserted error in failing to give IPI Criminal No. 25.05 would be waived.

Defendant argues, however, that the trial court's failure to give IPI Criminal No. 25.05 constituted plain error

under our Rule 451(c) (73 Ill. 2d R. 451(c)), which provides:

"[S]ubstantial defects [in instructions in criminal cases] are not waived by failure to make timely objections thereto if the interests of justice require."

Appellate court decisions are divided on the question of whether failure to give IPI Criminal No. 25.05, when not tendered, constitutes plain error under the rule. Cases holding that it is not plain error include *People v. Currie* (1980), 84 Ill. App. 3d 1056, 1064-65, *People v. Churchill* (1980), 80 Ill. App. 3d 405, 409-11, *People v. Tiller* (1978), 61 Ill. App. 3d 785, 796-97, *People v. Lynch* (1976), 43 Ill. App. 3d 1039, 1043-44, *People v. Caldwell* (1976), 39 Ill. App. 3d 1, 6-7, and *People v. Allen* (1976), 35 Ill. App. 3d 342, 347. Cases holding that the failure to give IPI Criminal No. 25.05 is plain error, regardless of whether defendant has tendered it, include *People v. Whitney* (1980), 86 Ill. App. 3d 617, 619-21, *People v. Martinez* (1979), 76 Ill. App. 3d 280, 282-84, and *People v. Pernell* (1979), 72 Ill. App. 3d 664, 666-68. See *People v. Sunquist* (1977), 55 Ill. App. 3d 263, 268; *People v. Wright* (1975), 32 Ill. App. 3d 736, 743-44.

Although this court has not addressed the precise issue, we have consistently emphasized the limited nature of the plain-error exception to the waiver rule created by Rule 451(c). (*People v. Roberts* (1979), 75 Ill. 2d 1, 14-15; *People v. Underwood* (1978), 72 Ill. 2d 124, 129-30.) The exception is restricted to the correction of "grave errors" (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 182; *People v. Jenkins* (1977), 69 Ill. 2d 61, 66) or to situations where the case is close factually and fundamental fairness requires that the jury be properly instructed. *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 182; *People v. Joyner* (1972), 50 Ill. 2d 302, 307.

In the instant case, the instructions informed the jury that the defendant was justified in using deadly force if he reasonably believed that force was necessary to prevent

imminent death or great bodily harm to himself (IPI Criminal No. 24.06), that the defendant did not have to prove his innocence and that the burden of proof remained with the State throughout the trial (IPI Criminal No. 2.03). Further, the record reveals that, in closing argument, defense counsel repeatedly and specifically emphasized that the State had the burden of proving defendant was not justified in the force he used. Additionally, the record discloses that the State, in rebuttal argument, also acknowledged this burden when it stated to the jury: "[Defense counsel's] contention that the State must show that the shooting was not justified is quite correct \*\*\*."

We believe in this case, the instructions, in combination with the closing arguments by counsel for both sides, apprised the jury that the State had the burden of proving that defendant was not justified in the force he used. Consequently, the failure of the trial court to give IPI Criminal No. 25.05 did not constitute "grave error." See *Henderson v. Kibbe* (1977), 431 U.S. 145, 52 L. Ed. 2d 203, 97 S. Ct. 1730. See also *United States v. Jackson* (7th Cir. 1978), 569 F.2d 1003, *cert. denied* (1978), 437 U.S. 907, 57 L. Ed. 2d 1137, 98 S. Ct. 3096 (where the court, utilizing a plain-error standard no stricter than that employed by this court, found that failure of the trial court to give an instruction that specifically placed the burden of proof on the self-defense issue on the government did not constitute plain error where (1) the court read the self-defense instruction to jury, (2) defense counsel stated, without objection, in closing argument that the prosecution had the burden of proof on the self-defense issue and (3) the evidence of defendant's guilt was overwhelming).

We note that *People v. Jenkins* (1977), 69 Ill. 2d 61, and *People v. Ogunsola* (1981), 87 Ill. 2d 216, cited by defendant, are distinguishable. In *Jenkins*, this court held that two instructions, in direct conflict with one another, one stating the law correctly and one stating the law incor-

rectly, constituted plain error under Rule 451(c). The instant case, however, does not involve such conflicting instructions. Moreover, *Jenkins* made no mention of closing arguments, whereas the closing arguments in the instant case, combined with the series of instructions that was given, sufficiently informed the jury that the State's burden included proving defendant was not justified in the force he used. We also find *Ogunsola* inapposite. There the State's burden instruction failed to contain a necessary element of the crime charged, *i.e.*, intent to defraud, in a deceptive practice offense. In the instant case, the jury was informed of all necessary elements of the crime charged.

With respect to the "factually-close" prong of the plain-error test, our review of the record leads to the conclusion that the evidence in this case was not factually close. We note initially that the trial court's instructing the jury on justifiable of force did not necessarily render this a factually close case. A self-defense instruction, like a voluntary manslaughter instruction, should be given if there is some evidence indicating the defendant's subjective belief that use of force was necessary. (*People v. Lockett* (1980), 82 Ill. 2d 546, 552. See *People v. Joyner* (1972), 50 Ill. 2d 302, 306-07.) The presence of some evidence of defendant's subjective belief does not necessarily place a case in the narrow constraints of the "factually close" standard of plain error.

In this case, notwithstanding the testimony that the victim moved his hand down from the top of the car, the evidence is not closely balanced on the question of whether the shooting occurred as a result of self-defense. (See Ill. Rev. Stat. 1979, ch. 38, pars. 7–1, 7–4.) The record, in a consistent manner, reveals that, prior to the shooting, defendant made several statements to the effect that he was going to kill the victim. One witness testified that after he received the knife wound, defendant stated, "He would get the [victim] before the night's over." A police of-

ficer testified that defendant said he would go home to get a gun. Another witness testified that after the stabbing, when they returned to the tavern, the victim repeatedly told defendant to "forget it." The record discloses that, after the stabbing, defendant came back in the tavern, made a phone call, then went home, picked up a .22-caliber rifle, and drove back to the bar. Although defendant testified that he told the victim he did not want to shoot him, one witness testified that she encountered defendant in his car after he had driven back to the tavern, and defendant stated, "I'm going to shoot that [expletive]." Another witness testified that she saw the victim walk up to the defendant's car and tell him to "just forget it; it was over." Still another witness stated that he observed something that looked like a gun protruding from the car window and heard defendant say something that sounded like "You cut me" and "I'm going to shoot your [expletive deleted]." Thus, the evidence strongly indicates that defendant did not shoot the victim as a result of his reasonable belief that the action was necessary to prevent imminent death or great bodily harm. The events surrounding the shooting lead us to the conclusion that this case was not "close factually."

In *People v. Roberts* (1979), 75 Ill. 2d 1, 15, this court, stressing the restrictive nature of the exception to the waiver rule created by Rule 451(c), stated that the "grave error" and "closely balanced evidence" tests create a limited exception that is "applicable only to serious errors which severely threaten the fundamental fairness of the defendant's trial." Under the circumstances of this case, we do not believe the trial court's failure to give IPI Criminal No. 25.05 was a serious error that "severely threatened the fundamental fairness" of the defendant's trial. Accordingly, we conclude that the failure to give IPI Criminal No. 25.05 did not constitute plain error.

Defendant next asserts that the trial court committed

reversible error by allowing the State to argue that defendant had a motive for shooting the victim and then giving IPI Criminal No. 3.04 to the jury. IPI Criminal No. 3.04 provided: "Motive is that which prompts a person to act. The State is not required to prove a motive for the commission of the crime charged." The instruction accurately states the law (*People v. Hobbs* (1966), 35 Ill. 2d 263, 269; *People v. Mangano* (1940), 375 Ill. 72, 76), and we perceive no error in the giving of it even in a case where the State has introduced some evidence of motive and argued motive to the jury. To the extent that *People v. Manzella* (1973), 56 Ill. 2d 187, 198-200, may imply to the contrary, it is overruled. We note, however, that the second edition of IPI Criminal (1981) has suggested that IPI Criminal No. 3.04 no longer be given, recognizing that motive or lack of it is a proper subject for argument to the jury.

For the above-stated reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE SIMON, dissenting:

I disagree with the majority's conclusion that no reversible error occurred here. I believe the failure to give Illinois Pattern Jury Instruction, Criminal, No. 25.05 (1968) (hereinafter cited as IPI Criminal) was a serious error that could not be remedied by arguments of counsel.

IPI Criminal No. 25.05 lists the elements of the crime of murder that must be proved by the State in cases like this one in which the defendant claims self-defense. The trial judge instead gave IPI Criminal No. 7.02, which defines what the State must prove without any reference to legal justification and is the proper instruction only when no evidence of justifiable use of force has been presented. Only No. 25.05 explains that lack of self-defense must be proved beyond a reasonable doubt—something that is not readily apparent to many jurors and potentially vital to defendants like Mr. Huckstead whose sole defense is self-

defense.

I agree with the cases of *People v. Whitney* (1980), 86 Ill. App. 3d 617, *People v. Martinez* (1979), 76 Ill. App. 3d 280, *People v. Pernell* (1979), 72 Ill. App. 3d 664, *People v. Sunquist* (1977), 55 Ill. App. 3d 263, and *People v. Wright* (1975), 32 Ill. App. 3d 736, that the failure to give IPI Criminal No. 25.05, when appropriate, constitutes plain error, cognizable on appeal despite the fact it is not objected to at trial. In a case such as this one in which the sole disputed issue is whether the defendant reasonably believed he was acting in self-defense, I believe it is grave error.

Moreover, I cannot agree with the majority that the arguments of counsel effectively substituted for the proper court instruction. Arguments of counsel are, in my opinion, a poor substitute for court instruction, even when both the defense and prosecuting attorneys agree on the legal point in issue. They lack the credibility of the court. Their words are apt to be forgotten as soon as the judge instructs the jury on what the law "really is." I therefore would reverse the defendant's conviction.