**UNITED STATES of America ex rel. Ronald C. HUCKSTEAD, Petitioner-Appellant,**

v.

**James GREER, Warden, Respondent-Appellee.**

No. 83–2192.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1983.

Decided June 19, 1984.

Gary R. Peterson, State Appellate Defender, Springfield, Ill., for petitioner-appellant.

James V. Cinotto, Asst. Atty. Gen., Springfield, Ill., for respondent-appellee.

Before PELL and BAUER, Circuit Judges, and MAROVITZ, Senior District Judge.*

MAROVITZ, Senior District Judge.

Huckstead appeals from the District Court's denial of his petition for a writ of habeas corpus. In this appeal, as in the petition for habeas corpus, Huckstead raises two grounds for relief: 1) that he received ineffective assistance of counsel because his attorney failed to tender the proper self-defense jury instruction; and 2) that he was denied a fair trial because the tendered instructions did not specifically state that the burden of proving that he did not act in self-defense was upon the state. The District Court, after reviewing the transcript of Huckstead's trial, concluded that he did not receive ineffective assistance of counsel, and that he waived his right to argue that he did not receive a fair trial by failing to comply with certain state procedural rules. We affirm.

A detailed recitation of the facts is not necessary for purposes of our review. Suffice to say that Huckstead, Ronnie Blagg and the victim Murray Dixon had an

* The Honorable Abraham Lincoln Marovitz, Senior District Judge for the Northern District of Illinois, is sitting by designation.

argument at the Corner Lounge Tavern in Mattoon, Illinois. Huckstead and Dixon went outside and engaged in a short fight in which Huckstead received a minor cut from a knife. The police came and cooler heads prevailed for the moment. Huckstead apparently made certain comments about "getting Dixon" and a police officer testified that Huckstead stated that he was going home to get his gun. Huckstead did in fact run home and get a loaded .22 caliber automatic rifle. He then drove back to the bar and sat in his car and waited for Dixon. When Dixon came out of the bar Huckstead called him over to the car. They then again engaged in an argument with Dixon shouting "you have a gun, so use it" and "go ahead and shoot me". Although the evidence conflicts somewhat at this point, apparently Dixon moved his right hand to his side and Huckstead shot him seven times and then drove off.

Huckstead was found guilty of murder and sentenced to 25 years imprisonment. The conviction was affirmed by the Illinois Appellate Court in an unpublished order, and by the Illinois Supreme Court in an opinion published at 91 Ill.2d 536, 65 Ill. Dec. 232, 440 N.E.2d 1248 (1982). A more complete statement of the facts can be found in that opinion.

At trial, Huckstead testified on his own behalf and admitted shooting Dixon. His sole defense was based upon his claim that he acted in self-defense and was therefore justified in using the amount of force that he used. Among the instructions that the jury received were:

IPI Criminal No. 2.03

"The defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence."

IPI Criminal No. 7.02

"To sustain the charge of murder, the State must prove the following propositions:

*First:* That the defendant performed the acts which caused the death of Murray Dixon;

*Second:* That when the defendant did so, he intended to kill or do great bodily harm to Murray Dixon,

or

he knew that his act would cause death or great bodily harm to Murray Dixon, or he knew that his acts created a strong probability of death or great bodily harm to Murray Dixon.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty of murder.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should not find the defendant guilty of murder."

IPI Criminal No. 24.06

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

The jury did not receive IPI Criminal No. 25.05, which provides that in addition to the elements of the crime, the State must also prove beyond a reasonable doubt "[t]hat the defendant was not justified in using the force he used." There is no dispute that since self-defense was the major issue in the trial, under Illinois law IPI Criminal

No. 25.05 should have been submitted to the jury in lieu of No. 7.02. *People v. Pernell,* 72 Ill.App.3d 664, 28 Ill.Dec. 886, 391 N.E.2d 85 (1979); *People v. Sunquist,* 55 Ill.App.3d 263, 12 Ill.Dec. 953, 370 N.E.2d 864 (1977). Huckstead maintains that he was denied effective assistance of counsel when his attorney failed to object to IPI No. 7.02 or to tender IPI No. 25.05. He is not critical of any other portion of his counsel's performance.

■ The Constitution guarantees a criminal defendant legal assistance which meets a minimum standard of professional representation. *United States ex rel. Williams v. Twomey,* 510 F.2d 634 (7th Cir. 1975), *cert. denied,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109. This standard applies whether counsel is appointed or retained. *Id.* at 640. The mere fact that a lawyer makes errors in the course of a trial does not necessarily demonstrate a failure to meet minimum professional standards. *Wade v. Franzen,* 678 F.2d 56 (7th Cir. 1982). Minimum professional competence guarantees reasonably effective counsel, not errorless counsel. *United States v. Weston,* 708 F.2d 302, 306 (7th Cir.1983). Even the best lawyers are not infallible. *Wade,* 678 F.2d at 58. There is no presumption of a deprivation of constitutional rights merely because a defendant's attorney makes egregious errors, tactical or strategic, in the preparation or actual trying of a case. *Twomey,* 510 F.2d at 640.

■ To prove a claim of ineffective assistance of counsel a defendant must demonstrate that counsel provided representation amounting to grossly incompetent professional conduct. *Weston,* 708 F.2d at 306. When reviewing an attorney's performance we are not free to second guess legitimate tactical decisions, rather, we examine only those blunders not classifiable as attorneys' tactics and determine whether they amount to grossly unprofessional conduct. *Id.* at 306.

■ In the instant case, Huckstead claims that his counsel's performance fell below minimum standards only when she failed to object to IPI No. 7.02 or to tender IPI No. 25.05. While this failure cannot be considered a tactical decision, by itself it can hardly be classified as grossly unprofessional conduct. Our review of the record reveals that Huckstead's attorney ably set up the only defense available to him, and made a strong and persuasive closing argument considering the evidence elicited at trial. The record also reveals that a comprehensive jury instruction conference took place, with Huckstead's attorney arguing for and receiving an instruction on justifiable use of force despite ample evidence that Huckstead was the aggressor. Several different instructions were tendered and rejected, and the fact that counsel neglected to tender the proper burden of proof instruction, while not commendable, is certainly understandable, especially in light of the fact that the set of instructions, read as a whole, place the burden upon the State. Important to note is that the trial judge was extremely well prepared at the instruction conference and yet he too failed to recognize that an incorrect instruction had been tendered and accepted. Counsel also skillfully impeached and cross-examined the prosecution's witnesses, and repeatedly emphasized in closing argument that the State had the burden of proving beyond a reasonable doubt that Huckstead was not justified in using the force he did. While it was definitely error to omit IPI No. 25.05, in light of counsel's overall performance we cannot conclude that Huckstead received ineffective assistance of counsel.

Huckstead's second argument, that he did not receive a fair trial, also revolves around his counsel's failure to submit IPI No. 25.05. He now maintains that because the jury did not receive the proper instruction, it was never informed that it could find the defendant not guilty if he was justified in using the force which he used. Thus, according to Huckstead, the issue of self-defense was effectively precluded from jury's consideration.

■ As noted earlier, Huckstead failed to object to IPI No. 7.02 either at

trial or in a post trial motion. This constitutes a waiver of the objection under Illinois law. *People v. Tannenbaum*, 82 Ill.2d 177, 47 Ill.Dec. 714, 415 N.E.2d 1027 (1980). Further, under Illinois law no party may raise on appeal the failure to give an instruction unless he tendered it at trial. *Id.* Thus, Huckstead waived his opportunity to argue in the State Court that the failure to give IPI No. 25.05 denied him a fair trial unless that failure amounted to plain error. The Illinois Supreme Court held that the omission did not amount to plain error. *People v. Huckstead*, 91 Ill.2d 536, 65 Ill. Dec. 232, 440 N.E.2d 1248 (1982). This failure to comply with State procedural rules precludes federal habeas review unless Huckstead can demonstrate cause for the non-compliance and prejudice resulting from the failure. *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508–2509, 53 L.Ed.2d 594 (1977).

■ To demonstrate cause for his failure to comply with State procedures, Huckstead relies upon his argument that he received ineffective assistance of counsel. This argument loses much of its impact with our decision that Huckstead's counsel did not perform below minimum standards. However, as the District Court pointed out, other Circuits have held that ineffective assistance of counsel short of that necessary to satisfy the Sixth Amendment standard, may satisfy the "cause" prong of the *Wainwright* test. *Tyler v. Phelps*, 622 F.2d 172, 177 (6th Cir.1980); *Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir.1978), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793. Like the District Court, we find it unnecessary to determine whether counsel's failure to object to IPI No. 7.02 constitutes a sufficient showing of cause because we conclude that Huckstead has failed to satisfy the prejudice prong of *Wainwright*.

In order to obtain collateral relief for errors in the jury charge, a prisoner must demonstrate that " 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.' " *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). The degree of prejudice resulting from an erroneous instruction must be evaluated in the total context of the events at trial. *United States v. Frady*, 456 U.S. 152, 169, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1983). " 'A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' Moreover, 'a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instructions of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction is but one of several components of the trial which may result in the judgment of conviction.' " *Id.* at 169, 102 S.Ct. at 1595 (quoting *Cupp v. Naughten, supra*, 414 U.S. at 146–47, 94 S.Ct. at 400).

■ After reviewing the entire record, we cannot conclude that the failure to give IPI No. 25.05 resulted in sufficient prejudice to meet the *Wainwright* standard. The jury was instructed that the State had the burden of proving all the elements of the crime and that the presumption of innocence remained with Huckstead throughout the trial. The jury was also instructed on the justifiable use of force. *Additionally, in closing argument Huckstead's attorney repeatedly emphasized that the burden was upon the State to prove beyond a reasonable doubt that Huckstead was not justified in using the force he used.* (Tr. at 486, 490, 518, 519, 520, 533). *In rebuttal argument, the prosecution agreed that this burden was upon the State* and then proceeded to explain how the burden had been met.

Mrs. Owen's contention that the State must show that the shooting was not justified is quite correct, . . . (Tr. at 552). Thus, it is highly unlikely that the jury was confused over who had the burden of proof on the issue of self-defense.

In *United States v. Jackson*, 569 F.2d 1003 (7th Cir.1978), this Court was faced with an argument very similar to the one Huckstead now presents. In *Jackson*, the jury received an instruction on self-defense, but, as in the present case, was not instructed on which party bore the burden of proof on the issue of self-defense. Because the defendant in *Jackson* was convicted in Federal District Court, this Court was faced with the question of whether the failure to give the burden of proof instruction constituted plain error. We held that the omission did not constitute plain error because: 1) the jury received an instruction on self-defense and therefore received defendant's theory of the case; 2) defendant's counsel stated in closing argument that the prosecution bore the burden of proving the absence of self-defense; and 3) the evidence of defendant's guilt was overwhelming.

 Huckstead seeks to distinguish *Jackson* by arguing that the evidence against him was not overwhelming and that while the instruction in *Jackson* made it clear that if the jury accepted defend-ant's version of the case it should find him not guilty, the instructions in the present case were not that clear. While we agree that the evidence of Huckstead's guilt was not overwhelming, it was certainly more than substantial, especially if the jury chose not to believe Huckstead's testimony. And in light of the fact that both the prosecutor and the defense attorney made it clear to the jury that the burden of proving the absence of self-defense was upon the State, we cannot conclude that the erroneous instruction so infected the trial that the conviction violated due process. In this regard we note, as did the District Court, that "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). Our review of the record as a whole leads us to conclude that it is very unlikely that the omission of the burden of proof instruction had any effect on the jury's determination of the case, and we therefore hold that Huckstead has failed to demonstrate sufficient prejudice to satisfy the second prong of the test enunciated in *Wainwright v. Sykes*. Accordingly, the decision of the District Court is affirmed.[1]

AFFIRMED.

---

1. After this opinion was written, but prior to its release, the Supreme Court decided *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674. In *Strickland* the Court for the first time enunciated the appropriate standard for judging a claim of ineffective assistance based upon an allegation of specific errors. The Court began by stating that the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. To prove that counsel's assistance was so defective as to require reversal of a conviction, a defendant must show, first, that counsel's performance was deficient and second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.

The *Strickland* Court stated that in any case presenting an ineffectiveness claim, the per-formance inquiry must be whether counsel's assistance was reasonable considering all of the circumstances. *Id.* at ——, 104 S.Ct. at 2063. Once the convicted defendant identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must then determine whether, in light of all the circumstances the identified acts or omissions were outside the wide range of professionally competent assistance, keeping in mind that counsel's function is to make the adversarial testing process work in the particular case. This is essentially the procedure we followed in the instant case when we determined that the omission made by Huckstead's counsel did not fall below minimum standards.

Moreover, the *Strickland* Court emphasized that errors by counsel, even if professionally unreasonable, do not warrant the setting aside of a judgment in a criminal proceeding if the error had no effect on the judgment. *Id.* at

———, 104 S.Ct. at 2065. In actual ineffectiveness cases prejudice is not presumed, but must be affirmatively proved by the defendant. To do so, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. We have concluded above that Huckstead has been unable to show this degree of prejudice in light of the fact that the burden of proof was so thoroughly explained by both counsel in closing argument. Accordingly, our reading of *Strickland* serves to strengthen our conclusion that Huckstead was not denied effective assistance of counsel.