THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES WILSON, Defendant-Appellant.

First District (6th Division)   No. 1—90—1926

Opinion filed June 5, 1992.

Rita A. Fry, Public Defender, of Chicago (Renee C. Graham, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Donald Lyman, and Joelle Marasco, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The defendant, James Wilson, was indicted for attempted murder, aggravated battery, armed violence, attempted criminal sexual assault, attempted aggravated criminal sexual assault, unlawful restraint and aggravated unlawful restraint. The defendant was tried by a jury.

After the State rested, the trial judge granted the defendant's motion for a directed verdict on the charge of the attempted criminal sexual assault of Dawn Franzen. The State dismissed some aggravated battery counts, some armed violence counts and both unlawful

restraint counts. The jury found the defendant guilty of one count of armed violence and one count of aggravated battery committed against Jesse Garza; not guilty of attempted murder, not guilty of one count of aggravated battery and not guilty of one count of armed violence. The judge granted the defendant's motion for a new trial on the charge of armed violence, and the State later dismissed that charge. The judge sentenced the defendant to five years in the Illinois Department of Corrections for aggravated battery. The defendant's sole argument is that the jury was not properly instructed that the State had the burden of proving that the defendant's use of force was not justified.

Dawn Franzen and her boyfriend, Jesse Garza, decided to spend the evening of Friday October 14, 1988, together because Garza was scheduled to leave two days later for his naval assignment in New Jersey. On that night, Franzen, then 17 years old, picked up Garza at his home in Itasca, Illinois, at 9:30 p.m. They went to downtown Chicago and drove around for awhile. They stopped to eat at a hot dog stand and then went to a liquor store where Franzen purchased a bottle of wine for herself and beer for Garza.

They drove to the North Avenue Beach, arriving there sometime between 11 p.m and midnight. They sat in the car talking and drinking. They got out of the car, sat under a tree, and continued to drink and talk. The two then began to argue over Garza's plans for the weekend; Franzen became very agitated when Garza told her he was going to spend Saturday with his friends, and not with her. Franzen began yelling and started walking back to the car, saying she wanted to leave. Garza then took Franzen's car keys because she was too drunk to drive. They continued to argue and some time around 2:30 a.m., Franzen "stormed off" for a nearby bathroom located in the North Avenue Beach House. She did not tell Garza where she was going.

Franzen testified that after she reached the beach house a man, later identified as the defendant James Wilson, approached her and said something. She ignored him and began to walk away. As she attempted to walk away, the defendant grabbed her arm, turned her around, and then put his hand on her breast. She began screaming, and the defendant placed his hand over her mouth, threatening to kill her if she did not shut up. The defendant hit her in the face, knocking her to the ground. She continued to struggle and screamed for Garza to help her. The defendant then pulled the top of her dress down. Garza arrived and began fighting with the defendant. Franzen then ran to Lake Shore Drive and flagged down a patrol car; she told the

officers that a man had tried to rape her. The police put her in another police vehicle and took her to Lutheran General Hospital.

Garza testified that after Franzen left him, two couples in a limousine drove up and asked if everything was alright. He told them that they were just having a "little domestic argument" and they drove off. He had begun looking for Franzen when he heard her screaming. He ran toward the beach house; behind the beach house, he saw Franzen lying on the ground with the top of her dress down and some blood on her mouth.

A man, later identified by Garza as the defendant, jumped out from behind some nearby bushes and hit him in the side. Garza fell to the ground and was struck by the defendant several more times as he was trying to get up. He hit the defendant and backed away into a lighted parking lot; the defendant fled south along the beach. The police arrived and when Garza got into the car, he noticed he was bleeding from his chest, short of breath and had pain in his left side. The police took him a block away where he identified the defendant. Garza was then transported to the emergency room at Lutheran General Hospital for treatment.

Police officer Dave Adkins testified that he responded to a call of an incident at the North Avenue Beach. He was given a description of a man to look for. He saw the man fitting the description, the defendant, leaving a tunnel under Lake Shore Drive. He arrested the defendant, searched him and found a screwdriver with blood on it. Another police car brought Garza to the scene, and Garza identified the defendant as the man who had attacked him.

Dr. Ramesh Rao testified that he treated Garza, who had suffered a collapsed lung which resulted from a puncture wound to his side. Garza also had a wound to his left shoulder. In Dr. Rao's opinion, the screwdriver recovered from the defendant could have caused the puncture wound.

Dr. Erica Heit testified that she treated Franzen at the hospital. Franzen had a broken tooth, a swollen lower lip, scratched knees, a superficial cut on her chin and a scrape on her left forearm. It was Dr. Heit's opinion that it was possible that the injuries resulted from a fall or from being punched in the face. Heit also ordered that a blood-alcohol test be given to Franzen; the test, taken approximately three hours after the incident, showed that Franzen had a blood-alcohol level of .252.

The defendant testified that on October 14, 1988, he was homeless and living on the North Avenue Beach. On that day, he worked at the Chicago Stadium until about 9:30 p.m. and then went to the Loop

to get something to eat. He proceeded to the North Avenue Beach and sat on a bench where he noticed a couple, Franzen and Garza, arguing loudly in their car. The couple got out of their car and sat under a tree, continuing to argue. After briefly returning to the car, the woman began to walk north towards the telephones at the beach house. He saw the man talk to some people in a black limousine which pulled up after the woman left. After the limousine left, Garza went after Franzen, who was staggering and "crying and hollering."

The defendant then testified that he went to the beach house and sat on a guard rail. While sitting on the guard rail, he saw Franzen fall on the beach house's concrete porch. She got up, but then slid down the wall into a squatting position with her head buried in her hands. The defendant offered to help her, but Franzen just kept screaming.

The defendant testified that he was attempting to leave when he saw Garza approaching. When Garza and the defendant met about 15 feet from Franzen, Garza asked him what he had done to his girl friend. The defendant did not respond, and Garza punched him in the mouth. The defendant asked Garza why he punched him, and Garza responded that the defendant had done something to his girl. Garza then kicked the defendant in the chest. The defendant fell against the wall, asked Garza not to hit him again and pulled out the screwdriver he kept for protection. Garza then struck the defendant again, and the defendant responded by swinging the screwdriver wildly. After the defendant struck him with the screwdriver, Garza stopped hitting him. The defendant suffered a swollen lip as the result of the altercation.

The defendant testified that both men stopped fighting and returned to Franzen. Garza attempted to help her up, but she refused his help, got up and headed north. Garza followed her, and the defendant began walking south. The police picked the defendant up a short time thereafter.

The defendant told the police that he lived at 943½ West 79th Street. He said he lied to the police because he was afraid to tell them he did not have a home. He told an assistant State's Attorney that, instead of returning to his home at 79th Street, he decided to go see a former girl friend, who was a prostitute. He could not give the police her name; he had not seen her in three years. He admitted that he lied to the assistant State's Attorney when he told her about looking for his girl friend. He told the police he had not stabbed anyone. He did not tell the police that Franzen had fallen and hurt herself.

In rebuttal, the State introduced four convictions of the defendant: In September 1983, he was convicted of retail theft; in April 1984, he was convicted of theft; in September 1984, he was convicted of burglary; and in May 1987, he was convicted of burglary.

After oral argument, the judge instructed the jury with the definitional and issue instructions for the charge of aggravated battery causing great bodily harm (Illinois Pattern Jury Instructions, Criminal, No. 11.08 (2d ed. 1981) (hereinafter IPI Criminal 2d)). The judge also gave the jury the general instructions on the State's burden of proof and presumption of innocence (IPI Criminal 2d No. 2.03) and the definitional instruction on legal justification, specifically, self-defense. IPI Criminal 2d No. 24—25.06.

The judge did not give IPI Criminal 2d No. 24—25.06A, which instructs the jury that the State has the burden of proving beyond a reasonable doubt that the defendant was not justified in the use of force that he used. It is that failure to give IPI Criminal 2d No. 24—25.06A which the defendant contends is reversible error. The State maintains that the defendant has waived the argument by failing to submit the instruction or raise the issue in a post-trial motion. The defendant argues that the waiver doctrine will not be applied where "grave errors" occur or in cases where fundamental fairness requires that the jury be properly instructed because the case is close factually.

The principal case relied on by the State is *People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248; and the principal case relied upon by the defense is *People v. Berry* (1984), 99 Ill. 2d 499, 460 N.E.2d 742. Both sides have referred us to several other cases, but we need not discuss any of the cases cited by the parties dealing with waiver and grave error, because we conclude that the jury was, in fact, properly instructed.

The heart of the defendant's argument is his contention that "[w]hile the jury was given the definitional instruction on self-defense, it was never informed that it was to consider that instruction with respect to the crime of aggravated battery." The record refutes that argument. As noted, the jury was instructed on legal justification:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force." (IPI Criminal 2d No. 24—25.06.)

Additionally, the jury was instructed on aggravated battery:

> "A person commits the offense of battery when he intentionally *without legal justification* and by any means causes bodily harm to another person." IPI Criminal 2d No. 11.05.

"To sustain the charge of aggravated battery causing great bodily harm, the State must prove the following proposition:

That the defendant intentionally *without legal justification* caused great bodily harm to Jesse Garza.

If you find from your consideration of all the evidence that this proposition has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that this proposition has not been proved beyond a reasonable doubt, you should find the defendant not guilty." (Emphasis added.) See IPI Criminal 2d No. 11.08.

■ The jury was also instructed that it must follow all instructions and that it must not single out certain instructions and disregard others. Reading the instructions together leaves no other conclusion but that the jury was instructed that the State had the burden of proving beyond a reasonable doubt that the defendant was not justified in the use of force that he used. There is no basis for the defendant's argument that the jury was confused and that it would consider the self-defense instruction only insofar as it pertained to the attempted murder charge.

■ The case of *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141, is instructive. Two appeals were involved. Steven Reddick and Gregory Lowe were convicted of murder in separate jurisdictions. Lowe was also convicted of attempted murder and aggravated battery. The supreme court reversed both murder convictions for failure to instruct the jury properly on the burden of proof when a defendant raises a question of self-defense. The court then considered whether the jury had been properly instructed on the burden of proof on the separate charges against Lowe of attempted murder and aggravated battery. The supreme court held that the jury had not been properly instructed and made this observation pertinent here:

"In Huckstead [(*People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248)] the court stated, 'the instructions, in combination with the closing arguments by counsel for both sides, apprised the jury that the State had the burden of proving that defendant was not justified in the force he used.' (91 Ill. 2d at 545.) In the instant case, however, the jury was not so apprised. Although the jury was instructed that the prosecution had the burden of proving every element of the crimes charged, *a lack of justification was not listed as an element of any of the alleged offenses.*" (Emphasis added.) 123 Ill. 2d at 202.

In contradistinction to *Reddick*, the jury in the case before us was specifically instructed that a lack of justification was one of the elements of the offense of aggravated battery that the State was required to prove. We point out also that the prosecutor in argument told the jury that the State had to prove that the defendant knowingly without legal justification caused great bodily harm to Jesse Garza. Consequently, we find that no error occurred in the giving of instructions.

The judgment of the circuit court is affirmed.

Judgment affirmed.

LaPORTA and RAKOWSKI, JJ., concur.