# Illinois Official Reports

## Appellate Court

---

### *People v. Coan*, **2016 IL App (2d) 151036**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WESLEY A. COAN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-15-1036 |
| Filed | June 29, 2016 |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 97-CF-248; the Hon. Robbin J. Stuckert, Judge, presiding. |
| Judgment | Reversed and remanded for a new trial. |
| Counsel on Appeal | Jack C. Slingerland, of Slingerland & Clark, of Sycamore, for appellant.<br><br>Lisa Madigan, Attorney General (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick, Assistant Attorney General, of counsel), and Daniel B. Lewin, of Quarles & Brady LLP, both of Chicago, for the People. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion.<br>Justices McLaren and Hudson concurred in the judgment and opinion. |

¶ 1 On July 1, 1998, defendant, Wesley A. Coan, was adjudicated a sexually dangerous person under the Sexually Dangerous Persons Act (Act) (725 ILCS 205/1.01 *et seq.* (West 1998)). On September 18, 2012, defendant filed an application for recovery, in which he argued that he was no longer a sexually dangerous person and requested a discharge or a conditional release. Following a trial on his application for recovery, a jury found that defendant was still a sexually dangerous person. We reverse and remand for a new trial.

¶ 2 I. BACKGROUND

¶ 3 On August 29, 1997, defendant was charged by information with aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 1996)). In lieu of criminal prosecution, the State filed a petition to civilly commit him as a sexually dangerous person pursuant to the Act. Following a stipulated bench trial, defendant was adjudicated a sexually dangerous person and committed to the Illinois Department of Corrections (IDOC). This court affirmed the trial court's order of commitment. *People v. Coan*, 311 Ill. App. 3d 296, 301 (2000). Thereafter, defendant unsuccessfully applied for a conditional release and for recovery in 2006 and 2009, respectively.

¶ 4 On September 18, 2012, defendant applied for recovery under section 9 of the Act (725 ILCS 205/9 (West 2012)). He amended the application in 2015. On June 15, 2015, a jury trial commenced on defendant's application.

¶ 5 The State called Dr. Deborah Nicolai, a licensed clinical psychologist, to testify. Dr. Nicolai testified that she conducted a sexually-dangerous-person evaluation of defendant for purposes of the trial, including a review of relevant documents and a three-hour interview of defendant. As part of her evaluation, Dr. Nicolai considered defendant's history of sexual offenses. Specifically, she testified that defendant was first convicted, in 1979, of aggravated incest. The factual basis for that conviction was that defendant engaged in oral and vaginal sex with his 11-year-old stepdaughter on numerous occasions. At the interview with Dr. Nicolai, defendant stated that the stepdaughter initiated the sexual contact.

¶ 6 Dr. Nicolai also testified that in 1981 defendant was convicted of indecent liberties after police found him engaging in oral sex with his 12-year-old stepson. He was on probation for his 1979 conviction at the time. Defendant told Dr. Nicolai that he was urinating in the cemetery where the act took place and that his stepson was helping him with the zipper on his pants. Dr. Nicolai further testified that, while defendant was released on bond for that offense, he fled to Florida. He was arrested in Florida, sent back to Illinois, and sentenced to 15 years' imprisonment.

¶ 7 Dr. Nicolai further testified that in 1990, while defendant was on parole for his 1981 conviction, he was arrested for and convicted of aggravated criminal sexual assault. On numerous occasions, defendant engaged in oral and anal sex with his girlfriend's 11-year-old son. On another occasion, defendant had all three of his girlfriend's sons (aged between 11 and 14 years) watch him engage in oral sex with their mother. He then instructed the boys to have sexual intercourse with their mother. Defendant told Dr. Nicolai that he had "passed out" and awoke to find the three boys having sex with their mother.

¶ 8    In 1997, while on parole for his 1990 conviction, defendant was charged with aggravated criminal sexual abuse. Dr. Nicolai testified that defendant fondled the breasts and buttocks of a 14-year-old girl. The victim was the daughter of one of defendant's former girlfriends. Defendant told Dr. Nicolai that the victim lied about the incident. That offense served as the basis for defendant's commitment as a sexually dangerous person.

¶ 9    Dr. Nicolai ultimately opined that defendant still met the criteria to be found a sexually dangerous person. She diagnosed him with "pedophilic disorder, sexually attracted to both, non-exclusive," which is a chronic disorder. Defendant suffered from pedophilic disorder for a period of not less than one year prior to the filing of the petition. Based on his criminal history, she believed that defendant had criminal propensities to commit sexual offenses against children. Dr. Nicolai further testified that defendant failed to make progress in treatment. Defendant stopped attending treatment in 2008 and officially dropped the treatment program in 2009. He told Dr. Nicolai that 11 years of treatment was "enough" and that treatment was a "waste of time."

¶ 10   Dr. Nicolai also testified that, in her opinion, there was a substantial probability that defendant would sexually reoffend if he were released. She conducted a risk assessment of him, using the Static-99 Revised (Static-99R). The Static-99R is an actuarial instrument derived from empirical studies that helps predict whether an individual who has been convicted of a sexual offense will reoffend. Although defendant's score on the Static-99R placed him in the "low-moderate" risk category, Dr. Nicolai testified that the Static-99R underestimated his risk. Specifically, defendant exhibited a plethora of "dynamic risk factors," which are empirically derived factors that are associated with an increased risk of reoffending. Defendant's dynamic risk factors included: a sexually deviant interest in children; a lack of emotionally intimate relationships with adults; dysfunctional relationships; offense-supportive attitudes (attitudes that justify or excuse his offending behaviors); and resistance to rules and supervision. As to the last factor, Dr. Nicolai noted that all but one of defendant's offenses occurred while he was on probation or parole. Additionally, while committed as a sexually dangerous person, defendant had received 33 institutional inmate disciplinary reports and had been suspended from treatment four times.

¶ 11   Dr. Nicolai further testified that no "protective factors" applied to defendant. Protective factors are empirically derived factors that are associated with a decreased risk to sexually reoffend. She acknowledged that defendant was 74 years old at the time of trial and that he had certain medical infirmities. Nevertheless, Dr. Nicolai testified that age as a protective factor is related only to "not having a lot of time left to live." Despite defendant's age and medical issues, there was no "indication that [defendant] wouldn't still have a long life ahead of him."

¶ 12   After the State rested, defendant called Dr. Kirk Witherspoon, a licensed clinical psychologist, to testify. In anticipation of the trial, Dr. Witherspoon conducted a sexually-dangerous-person evaluation of defendant, which included a review of relevant records and a three-hour interview with defendant. Dr. Witherspoon testified to defendant's medical issues, which included: "advanced" diabetes; high blood pressure; high cholesterol; angina; and erectile dysfunction. Also, he was primarily confined to a wheelchair. Dr. Witherspoon ultimately opined that defendant did not suffer from a mental disorder and that his risk of reoffending was "zero to negligible."

¶ 13   As to defendant's mental disorder, Dr. Witherspoon testified that pedophilic disorder "is and it isn't" chronic. The chronic component of the disorder depends on one's ability to

function. Specifically, pedophilic disorder requires both an attraction to prepubescent persons and a level of harm to the afflicted individual or other people as a result of the individual's acting on that attraction. Dr. Witherspoon testified that defendant "historically" suffered from pedophilic disorder, but that the diagnosis no longer applied to him. Although defendant "may or may not" have still been sexually attracted to prepubescent persons, he did not have the ability, due to his age and medical infirmities, to act on his sexual attraction and thereby cause harm to himself or others.

¶ 14    In regard to the risk of reoffending, Dr. Witherspoon testified that the Static-99R is not an accurate risk-assessment predictor. Additionally, it was not "sound practice" to apply dynamic risk factors to modify the results of an actuarial assessment. Dr. Witherspoon testified that, due to defendant's age, it was inappropriate to apply *any* actuarial risk assessment to attempt to determine his risk of reoffending. Actuarial assessments are "normed" on persons between the ages of 17 and 70. Furthermore, old age and medical infirmity are two protective factors that would "override" an actuarial scheme that was "normed" on able bodies. To assess defendant's risk, Dr. Witherspoon thus looked only to the base rate of reoffending for persons who were defendant's age. Based upon defendant's age and medical infirmities, Dr. Witherspoon opined that defendant's risk of reoffending was "zero to negligible." He also noted that treatment for pedophilic disorder might not affect an individual's risk of reoffending and that it "can become redundant to the point of ridiculousness."

¶ 15    On cross-examination, Dr. Witherspoon acknowledged that defendant was 56 years old when he committed the 1997 offense. He also acknowledged that defendant might have been an "outlier" as to typical reoffending trends, because he had persisted longer in committing sexual offenses than most other offenders.

¶ 16    Following the close of evidence, the trial court instructed the jury as to the law. The State proffered all of the instructions. Defendant did not object to any of the instructions that are relevant to this appeal. The relevant instructions that were read to the jury included the State's instruction No. 16, a modified version of Illinois Pattern Jury Instructions, Civil, No. 21.02 (2011):

> "The State must prove the following propositions:
>
> First: The Respondent is suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition; and
>
> Second: The Respondent's mental disorder is coupled with criminal propensities to the commission of sex offenders; and
>
> Third: The Respondent has demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children; and
>
> Fourth: That it is substantially probable the Respondent will engage in the commission of sex offenses in the future if not confined.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proven by clear and convincing evidence, you should find that the Respondent is still a sexually dangerous person.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proven by clear and convincing evidence, you should find that the Respondent is not a sexually dangerous person."

The trial court also gave the jury the State's instruction No. 9, a modified version of Illinois Pattern Jury Instructions, Criminal, No. 2.03 (4th ed. 2000):

> "The Respondent is presumed not to be a sexually dangerous person. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in this case you are convinced by clear and convincing evidence that he is still a sexually dangerous person.
>
> The State has the burden of proving that the Respondent is still a sexually dangerous person by clear and convincing evidence, and this burden remains on the State throughout the case. The Respondent is not required to prove that he is not a sexually dangerous person."

The trial court also gave the jury the State's instruction No. 10, Illinois Pattern Jury Instructions, Civil, No. 21.01 (2011) (IPI Civil (2011) No. 21.01), without objection. That instruction as tendered stated:

> "When I say that a party has the burden of proof on any proposition, or use the expression 'if you find' or 'if you decide,' I mean you must be persuaded, considering all the evidence in the case, that the proposition on which they have the burden of proof is more probably true than not true." IPI Civil (2011) No. 21.01.

The court also gave the jury two verdict forms, without objection. The verdict forms provided for two possible dispositions: (1) that defendant was still a sexually dangerous person or (2) that defendant was not a sexually dangerous person.

¶ 17 Following deliberations, the jury found that defendant was still a sexually dangerous person. On July 16, 2015, defendant filed a motion for a new trial. The trial court denied the posttrial motion on October 2, 2015, and defendant timely appealed.

¶ 18 II. ANALYSIS

¶ 19 Before we address defendant's contentions on appeal, some preliminary information concerning the proceedings will serve useful. As an alternative to criminal prosecution, the Act provides for the involuntary civil commitment of individuals who are adjudicated sexually dangerous persons. See 725 ILCS 205/2 (West 2012). Proceedings under the Act are civil in nature, but the Act provides certain due process protections that are afforded to criminal defendants, because commitment pursuant to the Act entails a loss of liberty. See *People v. Craig*, 403 Ill. App. 3d 762, 766 (2010).

¶ 20 After an individual is committed as a sexually dangerous person, he or she may file a written application that sets forth facts showing that he or she has recovered and is thus entitled to a discharge from commitment or a conditional release. See 725 ILCS 205/9(a) (West 2012); *Craig*, 403 Ill. App. 3d at 766. Either the sexually dangerous person or the State may elect to have the recovery hearing before a jury, and the State has the burden of proving by clear and convincing evidence that the applicant is still a sexually dangerous person. 725 ILCS 205/9(b) (West 2012).

¶ 21 As to the merits, defendant's first contention is that the trial court erred by instructing the jury with IPI Civil (2011) No. 21.01. He concedes that he did not object to the use of that instruction or raise the issue in a posttrial motion, but he claims that we should review his argument under the plain-error doctrine.

¶ 22    The State responds that defendant's argument is barred by the invited-error doctrine. Specifically, the State contends that defendant "agreed" to the use of IPI Civil (2011) No. 21.01 when he failed to object to its use. The State argues that defendant's failure to object to the instruction was not "mere oversight," as he objected to the use of other instructions.

¶ 23    A defendant forfeits review of any putative jury-instruction error if he or she does not (1) object to the instruction or offer an alternative instruction and (2) raise the issue in a posttrial motion. *People v. Herron*, 215 Ill. 2d 167, 175 (2005). The plain-error doctrine, however, provides an exception to normal forfeiture principles and allows a reviewing court to consider an unpreserved error under certain circumstances.[1] *Herron*, 215 Ill. 2d at 186-87. Nevertheless, even plain-error review is forfeited when a defendant invites the error. *People v. Johnson*, 2013 IL App (2d) 110535, ¶ 77. Under the doctrine of invited error, a defendant may not request to proceed in one manner at trial and then later argue on appeal that the course of action was in error. *People v. Harvey*, 211 Ill. 2d 368, 385 (2004). To permit a defendant to use the exact ruling or action that he or she procured in the trial court as a means for reversal on appeal would offend notions of "fair play" and encourage duplicitous behavior. *Harvey*, 211 Ill. 2d at 385.

¶ 24    The doctrine of invited error is inapplicable here. The State, not defendant, tendered IPI Civil (2011) No. 21.01. We reject the State's suggestion that, because defendant did not object to the instruction, he "agreed on the record to use the instruction." See *Harvey*, 211 Ill. 2d at 384-87 (rejecting the State's argument that one of the defendants invited the error by failing to object to the use of certain evidence at trial); *cf. People v. Patrick*, 233 Ill. 2d 62, 77 (2009) (the defendant invited the error by tendering the instruction at issue). Hence, we may address defendant's argument if plain error occurred. See *Harvey*, 211 Ill. 2d at 386.

¶ 25    The plain-error doctrine allows a reviewing court to consider an unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to affect the outcome of the case, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Under either prong, the defendant has the burden of persuasion. *Herron*, 215 Ill. 2d at 187.

¶ 26    Our first step in the plain-error analysis is to determine whether it was error for the trial court to instruct the jury with IPI Civil (2011) No. 21.01. See *Piatkowski*, 225 Ill. 2d at 565. Defendant contends that it was error for the trial court to give IPI Civil (2011) No. 21.01, because it incorrectly defined the State's burden of proof as "more probably true than not." Defendant thus contends that the jury conceivably could have applied the wrong burden of proof. The State responds that the trial court did not err by giving that instruction, because the jury was properly instructed that the "ultimate issues" had to be proven by clear and convincing evidence. The State contends that the instructions as a whole "exclusively identified" the correct standard and correctly allocated the burden of proof.

---

[1]The State does not contest the applicability of the plain-error doctrine to the present case. Nevertheless, it is important to point out that, although these proceedings are civil in nature, courts have addressed forfeited arguments under the plain-error doctrine in sexually-dangerous-person proceedings. See, *e.g.*, *People v. McVeay*, 302 Ill. App. 3d 960, 966 (1999).

¶ 27     Jury instructions provide jurors with the law that applies to the evidence presented. *Herron*, 215 Ill. 2d at 187. The instructions should not be misleading or confusing, and their correctness depends on whether ordinary persons acting as jurors would fail to understand them. *Herron*, 215 Ill. 2d at 187-88.

¶ 28     Here, the State was required to prove that defendant was still a sexually dangerous person by "clear and convincing evidence." 725 ILCS 205/9(b) (West 2012). We note that "clear and convincing evidence" is defined in the Illinois Pattern Jury Instructions, Criminal, No. 4.19 (4th ed. 2000), as "that degree of proof, which, considering all the evidence in the case, produces the firm and abiding belief that it is highly probable that the proposition on which the defendant has the burden of proof is true." It has otherwise been defined as " 'the quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the truth of the proposition in question.' " *Craig*, 403 Ill. App. 3d at 768 (quoting *Bazydlo v. Volant*, 164 Ill. 2d 207, 213 (1995)). The trial court here, however, used IPI Civil (2011) No. 21.01 to define the State's burden of proof. That instruction provided: "When I say that a party has the burden of proof on any proposition, or use the expression 'if you find' or 'if you decide,' I mean you must be persuaded, considering all the evidence in the case, that the proposition on which [they] have the burden of proof is *more probably true than not true*." (Emphasis added.) IPI Civil (2011) No. 21.01. That instruction undoubtedly provided the definition of the "preponderance of the evidence" standard. See *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 191 (2005) ("A proposition proved by a preponderance of the evidence is one that has been found to be more probably true than not true."). Because the instruction incorrectly defined the State's burden of proof, we hold that the court erred when it instructed the jury with IPI Civil (2011) No. 21.01.

¶ 29     Moreover, under the second prong of plain error, we conclude that defendant was deprived of a fair trial because the given instruction defined the State's burden of proof as a lesser burden than what was required in a recovery hearing under the Act. See 725 ILCS 205/9(b) (West 2012). An unsuccessful application for recovery results in an individual's continued commitment and further loss of liberty. *Craig*, 403 Ill. App. 3d at 771. The Act thus affords a number of due process protections in recovery proceedings. *Craig*, 403 Ill. App. 3d at 770. Furthermore, the Act explicitly provides that the State has the burden to prove by clear and convincing evidence that an applicant is still a sexually dangerous person. 725 ILCS 205/9(b) (West 2012); see also *Craig*, 403 Ill. App. 3d at 772 ("[T]he burden of proof as set forth in [section 9(b) of the Act] is clear and unambiguous."). "Clear and convincing evidence" is a higher standard than "preponderance of the evidence" but lower than the "beyond-a-reasonable-doubt" standard required to convict a person of a criminal offense. *Craig*, 403 Ill. App. 3d at 768. Nevertheless, the "clear and convincing evidence" standard "meets the minimum demands of due process" that is required in a recovery hearing. *Craig*, 403 Ill. App. 3d at 769 (citing *Addington v. Texas*, 441 U.S. 418, 423-24 (1979)). Thus, the use of an instruction that defined the State's burden of proof as "more probably true than not" (or by a preponderance of the evidence) failed to comply with the minimum due process requirements necessary to find that defendant was subject to continued commitment as a sexually dangerous person. See also *Addington*, 441 U.S. at 427 ("We conclude that the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence.").

¶ 30    Furthermore, we reject the State's argument that the instructions as a whole did not challenge the integrity of the judicial process. We are mindful that the trial court read two instructions that provided that the State had the burden of proving by clear and convincing evidence that defendant was still a sexually dangerous person. We also recognize, as the State mentions, that both parties and the trial court referenced the State's ultimate burden at various times during the trial. Nevertheless, while the jury might have been alerted to the *general* burden of proof borne by the State, the use of IPI Civil (2011) No. 21.01 provided the jury with the only *definition* of that burden of proof. As mentioned, the given definition was for the preponderance-of-the-evidence standard, a lesser burden than what the Act mandated and due process required. We will not assume that the jury was able to appreciate the distinction between the incorrect definition of the burden of proof that was provided through the use of IPI Civil (2011) No. 21.01 and the higher burden of "clear and convincing evidence" that was actually required. See *In re Timothy H.*, 301 Ill. App. 3d 1008, 1016 (1998) ("We decline to assume that jurors are sophisticated in the subtle differences in the legal burdens of persuasion that apply in different situations before the courts.").

¶ 31    Because of the important due process rights and concerns associated with proceedings under the Act, we agree with defendant that the use of IPI Civil (2011) No. 21.01 created a situation in which the jury could have applied the wrong burden of proof. Ultimately, the use of that instruction resulted in an unfair trial in which the jury's decision was likely rendered through an improper scope of analysis. Accordingly, we reverse and remand the matter for a new trial on defendant's application for recovery.

¶ 32    Our determination that the use of IPI Civil (2011) No. 21.01 constituted plain error obviates the need to address defendant's remaining contentions on appeal. We do, however, make one observation concerning defendant's argument that the trial court should have *sua sponte* instructed the jury as to the definition of "clear and convincing evidence." Without commenting on whether that argument has any merit, we merely note that, even if the court had *sua sponte* provided such an instruction, our result would likely not have been different. The jury would have then been confronted with two *different* definitions of the applicable burden of proof, one correct and the other incorrect. Such a *sua sponte* instruction would have rendered the instructions both partially incorrect and ambiguous, thereby potentially misleading the jury.

¶ 33                     III. CONCLUSION

¶ 34    For the reasons stated, the judgment of the circuit court of De Kalb County is reversed and the matter is remanded for a new trial.

¶ 35    Reversed and remanded for a new trial.