2021 IL App (2d) 180550-U
No. 2-18-0550
Order filed January 20, 2021

**NOTICE**: This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of McHenry County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17-CM-1021 |
| | ) | |
| KURTIS MORAN, | ) | Honorable |
| | ) | Joel D. Berg, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices McLaren and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   At defendant's trial for battery where he claimed self-defense, the jury instructions did not provide that the State had to prove beyond a reasonable doubt that defendant was not justified in the force he used and the arguments of the parties did not compensate for this instructional gap; though this instructional error was forfeited, it amounted to plain error and we therefore reverse defendant's conviction and remand for a new trial.

¶ 2    Defendant, Kurtis Moran, was charged with physically attacking Jeff Clemmons on July 26, 2017. Specifically, defendant was charged with one count of battery based on bodily harm (720 ILCS 5/12-3(a)(1) (West 2016)) and one count of battery based on physical contact of an insulting or provoking nature (*id.* § 12-3(a)(2)). At defendant's trial, the jury was instructed on the definition

of self-defense. However, the instructions defining battery did not advise the jury that the State had to prove that defendant was not justified in the force he used. Moreover, the instructions stating the elements of battery did not require the State to prove beyond a reasonable doubt that defendant acted without lawful justification. The jury found defendant guilty of battery based on bodily harm but not guilty of battery based on physical contact of an insulting or provoking nature. Defendant argues on appeal that, because the jury was not properly instructed, he was denied a fair trial. We agree. Accordingly, we reverse defendant's conviction and remand this cause for a new trial.

¶ 3                                                     I. BACKGROUND

¶ 4       Before defendant's jury trial began, the State "gave [the trial court] the self-defense instruction which [it] didn't have [that] morning." After defendant asked for copies, the State gave defendant the instructions it had, noting "[t]hat's your self-defense (indiscernible)." The trial court reserved ruling on giving the jury a self-defense instruction until after all the evidence had been presented.

¶ 5       During opening statements, the State told the jury that it would hear evidence that defendant "attack[ed] Jeff Clemmons, [the victim,] without legal justification." Defendant advised the jury that it would hear evidence that "he was just defending himself based on the aggressive actions and statements by Mr. Clemmons."

¶ 6       Evidence presented at trial revealed that some years before the charged incident in July 2017, defendant and Clemmons got into an altercation. Although the specific details of that encounter were not disclosed, the evidence indicated that both men were charged with offenses related to that encounter. Clemmons pleaded guilty to the charges brought against him, and the charges brought against defendant were dismissed.

¶ 7 Defendant and Clemmons both testified at trial. Defendant testified that, sometime around 7 p.m. on July 26, 2017, he and his young son were eating ice cream while walking toward the Opera House in Woodstock. On the way to the Opera House, they passed a Starbucks. Sitting at the Starbucks was Clemmons. Clemmons was sitting next to a man who knew defendant. After acknowledging the man, defendant and his son continued walking to the Opera House, which was two storefronts away from the Starbucks. Defendant then sat on the second or third stair of the five stairs leading to the Opera House, and his son sat on defendant's shoulders. While defendant was sitting on the stairs, Clemmons walked by. Clemmons was listening to music through earbuds.

¶ 8 Clemmons testified that he was at the Starbucks on the evening in question. He denied seeing defendant while he was sitting at the Starbucks but affirmed that, when he stood up from his seat, he saw defendant and his son sitting on the stairs of the Opera House. After leaving Starbucks, Clemmons walked on the sidewalk in front of the Opera House on his way to a choral concert in the center of the Woodstock town square.

¶ 9 Defendant and Clemmons offered significantly different accounts of what happened when Clemmons walked past defendant as he sat on the stairs to the Opera House.

¶ 10 Clemmons testified that he "[v]aguely" looked at defendant, who was about 15 to 20 feet away from Clemmons, and continued walking. Defendant then attacked Clemmons from behind, hitting Clemmons on the back of the head 30 to 40 times. Clemmons explained that defendant "was punching [him] wildly in the back of [his] head, and [he] tried to take cover." Clemmons denied starting a fight with defendant, striking defendant, or even attempting to hit defendant. However, Clemmons stated that, during the attack, he thought "[he] got [his] arm around [defendant's] head." Because of the attack, Clemmons sustained minor cuts and bruises to his face.

¶ 11    By contrast, defendant testified that, as Clemmons walked by the Opera House, he looked at defendant and said, " 'I'm going to get you.' " This scared and upset defendant. Defendant testified that, because Clemmons had threatened him, he "[u]nfortunately *** got up and *** grabbed [Clemmons's] earbuds." Defendant explained that he was "not going to sit there and let [Clemmons] tower over [him] and [his] son after he makes that comment that he's going to get [him]." At that point, Clemmons, who was standing right in front of defendant, hit defendant in the jaw. Defendant hit Clemmons back four times, and Clemmons put defendant in a headlock.

¶ 12    Michelle Buhrke described what she observed that night as she was sitting on the concrete wheelchair ramp leading to the Opera House. While Buhrke was sitting with her back to the Opera House and talking with her friends, she heard yelling. One of Buhrke's friends said "aye." Buhrke turned and saw that defendant was the one yelling. She saw him "roughly" put his son on the stairs. Defendant then stood up and started "wailing" on Clemmons, who had his back to defendant and was a little past where defendant had been seated. Buhrke testified that Clemmons had his hands up, trying to defend himself, and did not touch defendant. Buhrke estimated that defendant punched Clemmons about four times.

¶ 13    Officer William Lintner testified that he was patrolling the Woodstock town square when he was alerted to the fight. Lintner observed that Clemmons, who was rattled, had small cuts on his cheek and forehead that were bleeding. Lintner did not see any injuries to defendant. When Lintner talked to defendant about what had transpired, defendant said that Clemmons walked past him and said " 'one day' " while lunging toward defendant. Defendant then pulled Clemmons's earbud out because he wanted to speak to Clemmons, and Clemmons put defendant in a chokehold. Defendant said that he was defending himself.

¶ 14    At the final jury instructions conference, no further discussion was had on giving the self-defense instruction.

¶ 15    During closing arguments, the State read some of the jury instructions to the jury. In doing so, the State never indicated that a battery is committed when a defendant acts without lawful justification or that the State had to prove beyond a reasonable doubt that defendant was not justified in the force he used. The State did argue that when defendant punched Clemmons, "[h]e did so with no justification." Further, the State advised the jury that "it's important to also look at what is not included in [the instructions for battery]." The State explained that the jury should consider "what [the State] didn't have to prove beyond a reasonable doubt." Defendant did not read any of the instructions to the jury, but he did argue that, when the jury read the instructions and deliberated, it would find that defendant acted in defense of himself and his son.

¶ 16    The trial court provided the jury a definitional instruction for self-defense based on Illinois Pattern Jury Instructions, Criminal 4th, No. 24-25.06 (4th ed. 2000), stating that "[a] person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force." However, neither of the State-tendered definitional instructions for battery provided that the State had to prove that defendant acted " 'without legal justification.' " See Illinois Pattern Jury Instructions, Criminal 4th, No. 11.05 (4th ed. 2000), Committee Note, at 449 (IPI Criminal 4th No. 11.05, Committee Note). Rather, the definitional instruction for bodily-harm battery simply read: "[a] person commits the offense of battery when he intentionally and by any means causes bodily harm to another person." Moreover, neither of the State-tendered issues instructions for battery required the State to prove beyond a reasonable doubt "[t]hat the defendant was not justified in using the force which he used." See Illinois Pattern Jury Instructions, Criminal, No. 24-25.06A (4th ed.

2000) (IPI Criminal 4th No. 24-25.06A). Rather, the issues instruction for bodily-harm battery read:

> "To sustain the charge of battery, the State must prove the following proposition:
>
> That the defendant intentionally caused bodily harm to Jeffrey Clemmons.
>
> If you find from your consideration of all the evidence that each one of these propositions [*sic*] has been proved beyond a reasonable doubt, you should find defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions [*sic*] has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 17    While the jury was deliberating, the State realized that the jury had not been properly instructed on self-defense. The following exchange was had on that point:

> "MR. HUDSON [Assistant State's Attorney]: Is it possible that we could actually add a second proposition with the self-defense being given, or is there enough that it is all separated? So, in the propositions to the battery, if there isn't a self—or some justification raised, I think they're correct, but now with the justification being raised, I'm just—
>
> THE COURT: What does the IPI say?
>
> MR. HUDSON: I know that there is an option of adding it.
>
> THE COURT: Nobody asked for it. We have had our jury instructions conferences. We're good.
>
> MR. HUDSON: All right. Thank you, Judge."

¶ 18    As noted, the jury found defendant guilty of battery based on bodily harm and not guilty of battery based on insulting or provoking physical contact. Thereafter, the trial court sentenced

defendant to, among other things, 24 months of conditional discharge. Defendant never challenged any of the jury instructions in the trial court. This timely appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    At issue in this appeal is whether defendant was denied a fair trial when (1) the definitional instruction for bodily-harm battery did not include the phrase " 'without legal justification' " (IPI Criminal 4th No. 11.05, Committee Note) and (2) the issues instruction for bodily-harm battery did not require the State to prove beyond a reasonable doubt that defendant was not justified in the force he used (IPI Criminal 4th No. 24-25.06A). We review these issues *de novo*. *People v. Pierce*, 226 Ill. 2d 470, 475 (2007).

¶ 21    In making his arguments, defendant recognizes that he forfeited review of these issues by failing to raise them in the trial court. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve an issue for review on appeal, a defendant must object to the error at trial and raise the error in a posttrial motion). Nevertheless, defendant argues that his claims are reviewable under the plain-error rule or pursuant to his claim on appeal that his trial counsel was ineffective for failing to object to the insufficient instructions or tender proper instructions.

¶ 22    Generally, if a party fails to tender a particular jury instruction to the trial court, he may not argue on appeal that the trial court's failure to give that instruction constituted error. Ill. S. Ct. R. 366(b)(2)(i) (eff. Feb. 1, 1994) ("No party may raise on appeal the failure to give an instruction unless the party shall have tendered it."). However, Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013) provides an exception to this rule in criminal cases where the instructions suffer from "substantial defects." Rule 451(c) is coextensive with the plain error clause of Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) and is construed identically. *People v. Piatkowski,* 225 Ill. 2d 551, 564 (2007). Under the plain-error rule, forfeited issues are reviewable if (1) " 'a clear or

obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error' " or (2) " 'a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (quoting *Piatkowski*, 225 Ill. 2d at 565). The defendant bears the burden of establishing plain error. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008).

¶ 23    As noted, defendant also argues that the issues he raises are reviewable pursuant to his claim on appeal that his trial counsel was ineffective. To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance was objectively unreasonable (performance prong); and (2) it is reasonably probable that, but for counsel's unprofessional errors, the result of the proceeding would have been different (prejudice prong). *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

¶ 24    Ordinarily, under either the plain-error rule or a claim of ineffective assistance of counsel, we first must determine whether defendant has established error. *People v. Miller*, 2014 IL App (2d) 120873, ¶ 19. We need not do so here, however, as the State agrees that the jury was not properly instructed, *i.e.*, error occurred.

¶ 25    Although the State agrees that the jury was not properly instructed, it nevertheless contends that defendant is not entitled to any relief. Specifically, the State argues that defendant is not entitled to any relief because: (1) he invited the trial court's error in giving insufficient instructions, and thus he cannot complain about them now; and (2) he failed to establish that (a) the evidence was closely balanced (first-prong plain error), (b) the error was substantial (second-prong plain error), or (c) he was prejudiced by the insufficient instructions (prejudice prong of ineffective

assistance). We address the State's invited-error argument first, as it applies irrespective of plain error. *People v. Coan*, 2016 IL App (2d) 151036, ¶ 23.

¶ 26    Under the doctrine of invited error, a defendant may not ask to proceed in one manner at trial and then argue on appeal that so proceeding was error. *Id.* To allow a defendant to do so would offend notions of "fair play" and encourage deceitful behavior. (Internal quotation marks omitted). *People v. Harvey*, 211 Ill. 2d 368, 385 (2004).

¶ 27    We determine that the doctrine of invited error is inapplicable here. The record reflects that the State, not defendant, tendered the relevant jury instructions. We reject the State's suggestion that, because defendant did not respond when the State alerted the trial court to the fact that the jury instructions were not complete, defendant essentially agreed that the instructions were proper. See *Coan*, 2016 IL App (2d) 151036, ¶¶ 23-24 (rejecting argument that defendant invited error when he did not object to the State's tendered jury instruction). The invited-error doctrine is also inapplicable to defendant's claim of ineffective assistance of counsel. Compare *People v. Wood*, 2014 IL App (1st) 121408, ¶¶ 57-59 (holding that the invited-error doctrine did not apply to ineffectiveness claim that was based on defense counsel's pursuing at trial a *different* theory than the defendant wished).

¶ 28    We next consider whether defendant has established either prong of the plain-error rule or that he was prejudiced by trial counsel's failure to object to the insufficient instructions or tender proper instructions. In doing so, we begin by addressing whether defendant has established second-prong plain error, as that issue provides, in itself, sufficient grounds for reversal. In addressing this issue, we consider whether the failure to sufficiently instruct the jury was an error " 'so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial

process, regardless of the closeness of the evidence.' " *Thompson*, 238 Ill. 2d at 613 (quoting *Piatkowski*, 225 Ill. 2d at 565).

¶ 29    Instructive here are *People v. Huckstead*, 91 Ill. 2d 536 (1982) and *People v. Berry*, 99 Ill. 2d 499 (1984). In *Huckstead*, the defendant got into an argument with the victim, and the victim stabbed the defendant. *Huckstead*, 91 Ill. 2d at 538. The defendant left the scene, retrieved a gun, returned to the scene, and shot the victim. *Id.* The defendant contended that he shot the victim only after he thought the victim was reaching for a weapon. *Id.* at 540. Although the jury was instructed on, among other things, the elements of murder and justifiable use of force, it was not instructed that the State had to prove beyond a reasonable doubt that the defendant was not justified in the use of force that he used. *Id.* at 542-43. Our supreme court determined that the instructions given, in combination with the parties' closing arguments, adequately apprised the jury that the State had the burden of proving beyond a reasonable doubt that the defendant was not justified in using the force he used. *Id.* at 545. In reaching that conclusion, the court noted that "defense counsel repeatedly and specifically emphasized that the State had the burden of proving defendant was not justified in the force he used." *Id.* Moreover, the court observed that "the State, in rebuttal argument, also acknowledged and assumed this burden when it stated to the jury: '[Defense counsel's] contention that the State must show that the shooting was not justified is quite correct.' " *Id.*

¶ 30    In *Berry*, two of the State's witnesses testified that the defendant shot and killed the victim after the victim had accused the defendant of selling him " 'bad' " marijuana. *Berry*, 99 Ill. 2d at 501. The defendant testified that, after the victim pointed a gun at him, the defendant produced a gun and told the victim to put his gun down. *Id.* at 502. Another person then grabbed the defendant's arm, and the gun fired. *Id.* Although the jury was given an instruction on the definition

of self-defense and the elements of voluntary manslaughter, the jury was not instructed that the State had to prove beyond a reasonable doubt that the defendant was not justified in the force he used. *Id.* at 503. Our supreme court determined that this constituted "grave error" under the second prong of the plain-error rule. (Internal quotation marks omitted.) *Id.* at 505. In so concluding, the court found *Huckstead* distinguishable, noting that "unlike in *Huckstead*, defense counsel failed to inform the jury in closing argument (or at any time during the trial) of the State's burden of proving, beyond a reasonable doubt, that the defendant was not justified in his use of force." *Id.* at 505-06. Rather, "[d]efense counsel merely made a general reference to the State's burden 'of proving [defendant] guilty of each and every allegation that is charged beyond a reasonable doubt.' " *Id.* at 506. The court noted that this "instructional gap was not filled by the prosecutor who, in rebuttal, merely acknowledged that the State has the burden of proof." *Id.*

¶ 31     This case squares more with *Berry* than *Huckstead*. Here, the jury was never instructed that the State was required to prove beyond a reasonable doubt that defendant was not justified in the force he used. Although self-defense and the State's burden of proving the batteries beyond a reasonable doubt were discussed in opening and closing arguments, neither party apprised the jury that the State was required to prove beyond a reasonable doubt that defendant was not justified in the force he used. Further, this "instructional gap" was compounded when the State advised the jury during closing argument that it should consider what the State *did not* have to prove beyond a reasonable doubt in establishing that a battery occurred. Quite simply, the failure to inform the jury that the State's burden of proof included *disproving* self-defense beyond a reasonable doubt was, like in *Berry*, second-prong plain error. See *id.* at 505-06.

¶ 32     The State, which does not acknowledge *Berry* in its brief, argues that defendant failed to establish second-prong plain error because, although the closing arguments here did not emphasize

the State's burden as strongly as the State and the defendant did in *Huckstead*, the State did mention in opening and closing arguments that defendant acted "without legal justification" or "with no justification." *Berry* and *Huckstead*, however, both make clear that that is not enough. What is required when a defendant raises self-defense during a jury trial is, most preferably, an instruction advising the jury that the State must disprove self-defense beyond a reasonable doubt, or, in the absence of such an instruction, arguments by the parties that fill the "instructional gap" (*Berry*, 99 Ill. 2d at 506) by clarifying that the State must not only prove the elements of the offense but also disprove self-defense—all beyond a reasonable doubt. *Id.*; *Huckstead*, 91 Ill. 2d at 545. As in *Berry*, and unlike in *Huckstead*, this guidance was missing here.

¶ 33    Because we conclude that defendant has established second-prong plain error, we need not consider whether defendant has established first-prong plain error or whether his trial counsel was ineffective for failing to object to the insufficient instructions or tender proper instructions.

¶ 34    In reaching our conclusion that defendant has established second-prong plain error, we also determine that, because the evidence against defendant, if believed, was sufficient to convict him of bodily-harm battery, double jeopardy does not bar his retrial for that offense. *People v. Getter*, 2015 IL App (1st) 121307, ¶ 78.

¶ 35                               III. CONCLUSION

¶ 36    For the reasons stated, we reverse the judgment of the circuit court of McHenry County and remand this cause for a new trial.

¶ 37    Reversed and remanded.